UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PING WANG and ZHAOFANG GUO, as parents
and natural guardians for KG

                Plaintiffs,

v.                                      **DECISION AND ORDER**
                                                08-CV-575S

WILLIAMSVILLE CENTRAL SCHOOL DISTRICT,

                Defendant.

## I. INTRODUCTION

Plaintiffs Ping Wang and Zhaofang Guo commenced this action as parents and natural guardians for "KG," by filing a Complaint in the Supreme Court for the State of New York, Erie County, alleging that Defendant violated their rights under the Fourteenth Amendment to the United States Constitution, 42 U.S.C § 1983, and the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq., ("IDEA"), and defamed KG. Thereafter, Defendant removed the case to this Court based on federal question jurisdiction, 28 U.S.C. § 1331.

Presently before this Court is Defendant's Motion to Dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and failure to state a claim. For the reasons discussed below, Defendant's Motion to Dismiss is granted.

1

## II. BACKGROUND

**A.     Facts**

The following facts are taken from the Complaint, or are otherwise undisputed, and are presumed true for purposes of this Decision and Order. Plaintiffs Ping Wang and Zhaofang Guo are the parents of KG. (Complaint, ¶ 2.) At all relevant times, KG was a student in the Williamsville Central School District ("the District"). (¶¶ 5-6.)

On April 17, 2007, while KG was in art class, two students approached him and said, "[y]ou're such a loser." (¶ 10.) KG responded, "[a]t least I wasn't the only oriental loser." (¶ 10.)

The next day, April 18, 2007, the same two students approached KG, and asked, "so [KG], are you going to kill anyone?" (¶ 11.) KG responded, "I don't even own a 9mm." (Compl. ¶ 11.) The two students then "made comments" to their teacher about KG, who, in turn, reported to school authorities. (¶ 11.) As a result, KG was suspended. (¶ 11.) On April 18, 2007, the District required that KG undergo a psychiatric evaluation at a hospital, after which he was permitted to return to school. (¶ 18.) During his suspension, KG missed one test. (¶ 19.) The parties agree the suspension lasted one day. (Docket Nos. 3-4 at 2, 8 at 3.) Prior to his suspension, KG had never been is disciplinary trouble at any school in the District. (Complaint, ¶ 12.)

The District knew that KG was diagnosed as "likely or very likely" to have a disability known as Asperger's Disorder-Autistic Spectrum Disorder. (¶ 14.) The District also knew that KG was suffering from depression. (¶ 15.) However, the District failed to act on that knowledge and provide protection or services to KG in connection with the April 18, 2007

2

incident. (¶ 15.) Instead, according to Plaintiffs, the District was influenced by a recent incident at the Virginia Technical University[1] campus, and punished KG because of his race—Asian—by requiring that he undergo a psychiatric evaluation. (¶¶ 16-18.)

On numerous occasions between April 18, 2007 and June 2007 [sic], KG was bullied and taunted by other students. (¶¶ 20-21.) Plaintiffs reported many incidents to the District, but it failed to take reasonable action. (¶¶ 21, 23-24.)

According to Plaintiffs, the District "acted in a discriminatory manner" in failing to protect KG. (¶ 27.) They further contend that the District "made public comments regarding the status of . . . KG, thereby defaming his character and reputation." (¶ 28.)

Plaintiffs requested that KG be transferred to another school within the District. (¶ 29.) The request was denied. (¶ 30.) Plaintiffs then removed KG from the District, and placed him in a private school where they had to pay tuition. (Compl. ¶ 31.)

**B.      The Complaint and Motion**

Based on these fact allegations, Plaintiffs claim that the District: (1) denied KG a free and appropriate education in violation of the Fourteenth Amendment and the Education Law of New York State by suspending him and failing to protect him (¶¶ 32-35); (2) violated his due process rights when it required him to undergo a psychiatric examination as a condition of his return to school (¶¶ 36-41); (3) violated his rights under 42 U.S.C. §1983 (¶¶ 16, 42-44); (4) violated his rights under the IDEA (¶¶ 45-47); and (5) made defamatory statements to the public that harmed K.G.'s character and reputation (¶¶ 48-51).

---

[1] Plaintiffs presumably are referring to the Virginia Polytechnic Institute and State University.

The District moves to dismiss the Complaint in its entirety under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## III. DISCUSSION

**A.     Standards of Review**

    **i.     Subject Matter Jurisdiction**

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing the existence of federal jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Where, as here, the jurisdictional challenges are raised at the pleading stage, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008). It is "presume[d] that general [fact] allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) (alterations added). The court also may consider affidavits and other evidence outside the pleadings to resolve the jurisdictional issue, but it may not rely on conclusory or hearsay statements contained in affidavits. J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004), *cert. denied*, 544 U.S. 968, 125 S. Ct. 1727, 161 L. Ed. 2d 616 (2005). Indeed, courts "must" consult factual submissions "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001).

**ii.    Sufficiency of the Pleadings**

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12 (b)(6).

In opposition to the District's Rule 12(b)(6) motion, Plaintiffs assert additional "facts" in, and attach documents to, their memorandum of law. They urge the Court to "dismiss" [sic] the District's motion because "genuine issues of material fact exist," and "no discovery has been conducted in this matter." (Docket No. 8 at 1, 3.) In short, Plaintiffs respond as if the District moved for summary judgment, rather than for dismissal on the pleadings. The District, in reply, reasserts its motion to dismiss and urges the Court to apply a Rule 12 standard of the review. (Docket No. 9 at 1, fn.1.)

"If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).

Having reviewed the parties' submissions, I decline to consider Plaintiffs' unsworn "fact" statements[2] and unauthenticated documents. Accordingly, the matters outside the pleadings are excluded, and the following standard of review applies to Plaintiffs' Complaint.

Federal pleading standards are generally not stringent. Rule 8 requires only a short and plain statement of a claim. FED. R. CIV. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." <u>Bell Atlantic Corp. v.</u>

---

[2] The additional information is offered at pp. 3 and 5-8 of Plaintiffs' memorandum of law.

Twombly, 550 U.S. 544,127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). Legal conclusions, however, are not afforded the same presumption of truthfulness. *See* Iqbal, 129 S.Ct. at 1949 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility is present when the factual content of the complaint allows for a reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* at 1950; FED. R. CIV. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint. First, statements that are not entitled to the assumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away. *See* Iqbal, 129 S.Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to

6

relief."[3]  *Id.*

**B.     Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1)**

The District contends that the Court lacks jurisdiction over this action because Plaintiffs failed to exhaust their administrative remedies prior to bringing suit. According to the District, Plaintiffs' allegations all give rise to claims under the IDEA, which has an exhaustion requirement. This is so, the District contends, even if Plaintiffs purport to bring their claims under other federal statutes or the Constitution of the United States.

"The IDEA's central mandate is to provide disabled students with a 'free appropriate public education' in the least restrictive environment suitable for their needs." Cave v. East Meadow Union Free School Dist., 514 F.3d 240, 245 (2d Cir. 2008) (quoting Heldman ex rel. v. Sobol, 962 F.2d 148, 150 (2d Cir. 1992)). Parents of students with disabling conditions have an opportunity for input into decisions affecting their child's education and the right to seek review of decisions they believe are inappropriate. Cave, 514 F.3d at 245 (citing Honig v. Doe, 484 U.S. 305, 311-12, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)). To that end, parents may request a due process hearing "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." 20 U.S.C. §§ 1415(b)(6), (k).

It is well-settled that, prior to bringing suit in federal court for a violation of the IDEA,

---

[3] Although seemingly inconsistent with the command to treat well-pleaded factual allegations as true, this plausibility inquiry appears to include consideration of whether more likely or alternative explanations for the complained-of conduct exist. *See, e.g.*, Iqbal, 129 S.Ct. at 1951-52 ("But given more likely explanations, [the allegations] do not plausibly establish this purpose."); Twombly, 550 U.S. at 567-68 (finding that plaintiff's allegations were not suggestive of antitrust conspiracy in the face of an "obvious alternative explanation" for the allegations in the complaint).

parents must exhaust their administrative remedies.[4] Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir. 2002). Absent exhaustion, a federal court may not exercise subject-matter jurisdiction over the action. *Id*. "Furthermore, the IDEA statute requires plaintiffs with *any* claims related to the education of disabled children . . . to exhaust the administrative remedies under IDEA prior to initiating a federal lawsuit" even if their claims are brought under a statute other than the IDEA. Gardner v. Uniondale Pub. Sch. Dist., No. 08 Civ. 847, 2008 U.S. Dist. LEXIS 84496, at *18-19 (E.D.N.Y. Oct. 21, 2008) (emphasis in original) (citing 20 U.S.C. § 1415(l) ("Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution . . . or . . . Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the procedures under [20 U.S.C. §§ 1415(f) and (g)] shall be exhausted to the same extent as would be required had the action been brought under [20 U.S.C. §§ 1411 *et seq.*"])); *see also*, J.S., 386 F.3d at 112.

Plaintiffs do not dispute that IDEA claims require exhaustion. They oppose the District's motion under 12(b)(1) on the grounds that: (1) they had previously refused IDEA services for KG, so the statute does not apply to their claims, (2) the District's unlawful actions were the result of race discrimination, (3) even assuming their claims fall under the IDEA, the futility exception to the exhaustion requirement applies, and (4) they are seeking remedies unavailable under the IDEA.

---

[4] That process includes a hearing conducted by an impartial hearing officer, 20 U.S.C. § 1415(f), and appeal to a state review officer, § 1415(g). *See* 8 N.Y.C.R.R. § 200.5(l), (j).

i.  **Applicability of the IDEA**

Plaintiffs first argue, without citation to any authority, that because KG was never formally classified as disabled, he "had no rights under the IDEA" and "had no available administrative remedies under IDEA." (Docket No. 8 at 5-6.) In support, they have appended to their memorandum of law a self-serving, unauthenticated letter[5] in which they purport to have declined an evaluation and any special education services for KG in 2004. No such allegation appears in their Complaint.

As best this Court can discern, Plaintiffs contend that, because they did not seek services for KG prior to the April 18, 2007 incident, they cannot state a cognizable claim for relief under the IDEA. As a result, this Court must construe their claims as something other than IDEA claims and find that, despite their failure to exhaust administrative remedies, the Court has subject-matter jurisdiction. Plaintiffs' "reasoning" is flawed because it conflates the Rule 12(b)(1) and 12(b)(6) standards of review.

When considering the existence of subject-matter jurisdiction, the focus is on the nature of the defendant's alleged wrongdoing. The Court examines the fact allegations relative to the defendant's conduct, and must determine whether it has the power to adjudicate the dispute. Before a district court can consider whether the complaint states a cognizable claim for relief, it must first ascertain whether it has the authority to make that determination. Plaintiffs' proffered document, even were the Court to credit its authenticity, relates to the viability of Plaintiffs' claims; it has no bearing on the question of jurisdiction.

Here, Plaintiffs expressly invoke the IDEA as a jurisdictional basis for suit (Docket

---

[5] Plaintiffs could have attested to the document's source and authenticity in an affidavit. However, they failed to submit an opposing affidavit as required by Local Rule of Civil Procedure 7.1(e).

9

No. 1 ¶ 1), and seek relief for violations of KG's rights under the IDEA (¶¶ 45-47). The District's alleged wrongdoing involves its failure to take KG's autism and depression into account when it suspended him and later refused to transfer him to another school, and its failure to provide him protection and services based on those same medical conditions. (*Id*. ¶¶13-15, 18, 29-30). Plaintiffs claim that as a result, KG was denied a free appropriate public education, and they were compelled to pay for private school tuition. (*Id*. ¶¶ 31, 33, 35, 39, 41, 44, 47.) The District urges, and this Court agrees, that claims based on these allegations arise under the IDEA. *See* Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 205 (2d Cir. 2007) (dispute over whether behavior leading to discipline is a manifestation of child's disability and disputes over placement in particular school are IDEA claims and require administrative exhaustion); Polera, 288 F.3d at 488 (IDEA is intended to remedy claim that school district failed to provide appropriate educational services and exhaustion is required); T.Y. v. New York City Dep't of Educ., 584 F.3d 412, 415-16 (2009) (claims for tuition reimbursement based on school district's failure to provide free appropriate education arise under IDEA and require exhaustion); M.N. v. New York City Dep't of Educ., No. 09 Civ. 20, 2010 U.S. Dist. LEXIS 33239, at *27 (S.D.N.Y. Mar. 25, 2010) (same). Accordingly, this Court rejects Plaintiffs' contention that their first through fourth claims—each of which seek relief for the District's having hindered KG's education or denied him a free and appropriate education—do not fall under the IDEA.

Plaintiffs next argue that, "[r]ather than consider K.G.'s disability in its discipline, the Defendant chose instead to racially discriminate against K.G." (Docket No. 8 at 6.) Thus, they apparently contend that their first through fourth claims for relief should be construed as race discrimination claims, not IDEA claims.

Plaintiffs' attempt to recast their claims is unavailing. What they are alleging, in essence, is that the District knew it had certain obligations to KG because of his medical conditions, but it failed to act on that knowledge when it let another factor take precedence. The gravamen of their claim is the failure to provide appropriate services to KG; the purported reason for the failure—race discrimination—is secondary. Regardless of any improper motivating factor in disciplining KG, requiring a psychiatric evaluation, and denying a transfer to another school, Plaintiffs' first through fourth claims for relief all invoke KG's right to a free appropriate public education, and all state that the District's actions hindered that right. Accordingly, these claims fall under the IDEA. Dallas v. Roosevelt Union Free Sch. Dist., 644 F. Supp. 2d 287, 295 (E.D.N.Y. 2009) (rejecting plaintiffs' claim that exhaustion was excused because school district's alleged failures were motivated by race); Cave v. East Meadow Union Free School Dist., 514 F.3d 240, 248 (2d Cir. 2008) (plaintiffs' claims of disability discrimination relative to district's failure to allow for a service dog were not beyond the bounds of the IDEA's educational scheme and exhaustion was required).

### ii. The Futility Exception

The IDEA's exhaustion requirement is excused when exhaustion would be futile. J.S., 386 F.3d at 112; Polera, 288 F.3d at 488. Plaintiffs bear the burden of proof on the issue of futility. J.S., 386 F.3d at 112 (citations omitted). "[T]he exhaustion requirement is predicated on Congress's belief, expressed through the statutory scheme, that administrative agencies can 'get it right'; that the agencies themselves are in the optimal position to identify and correct their errors and to fine-tune the design of their programs. Sweeping exceptions to the exhaustion requirement are at odds with this belief." Polera,

288 F.3d at 489.

The situations in which exhaustion will be excused include where:

(1) it would be futile to use the due process procedures . . .; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought) . . .

Mrs. W. v. Tirozzi, 832 F.2d 748, 756 (2d Cir. 1987) (citations omitted).

Here, Plaintiffs urge that, assuming their claims fall under the IDEA, the futility exception applies because "an administrative agency cannot undo the Defendant's acts of its racial discrimination," "administrative remedies do not include an award of damages and attorneys fees for the severe psychological trauma caused by the Defendant's actions" and "KG is no longer a student in the public school system." (Docket No. 8 at 10.)

The Court finds each argument insufficient to excuse exhaustion.

First, as already has been determined, allegations that a district was motivated by discrimination to violate the IDEA do not excuse exhaustion.

Second, exhaustion is not excused merely because Plaintiffs have demanded damages that are unavailable under the IDEA. As the Second Circuit noted in Polera:

[T]he statute speaks of available relief, and what relief is available does not necessarily depend on what the aggrieved party wants. . . . The theory behind the [claim] may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply. We read "relief available" to mean relief for the events, condition, or consequences of which the person complains, not necessarily of the kind the person prefers.

288 F.3d at 487-88 (quoting Charlie F. v. Board of Educ. of Skokie Sch. Dist., 98 F.3d 989 (7th Cir. 1996)) (internal citations and quotation marks omitted). In short, if the IDEA provides some form of relief for Plaintiffs' complaints, it does not matter that it does not

12

provide all forms of relief Plaintiffs have requested. Polera, 288 F.3d at 488 (fact that plaintiff sought damages, in addition to relief available under IDEA, did not enable her to sidestep exhaustion requirements); Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 790 (2d Cir. 2002) (plaintiffs cannot evade exhaustion requirement by framing action as one for monetary relief); Gardner, 2008 U.S. Dist. LEXIS, at *42-43 (same).

Here, Plaintiffs do not argue that the administrative process could not redress the District's alleged failures with respect to discipline, denial of a transfer, and the denial of a free appropriate education, including their expenditures of private school tuition. They urge only that they cannot obtain punitive damages, money damages, and attorneys fees. Docket No. 8 at 10, 12, 16.) The unavailability of certain monetary damages under the IDEA is not sufficient to render the administrative process futile.

Finally, the fact that KG is no longer enrolled in the school district does not abate the requirement to exhaust administrative remedies. Courts have found the unilateral decision to transfer to another school before exhausting the administrative process to be insufficient to excuse the exhaustion requirement. *See* Dallas, 644 F. Supp. 2d at 295 (citing Gardner, 2008 U.S. Dist. LEXIS 84496, at *43-46 (collecting cases)). Accordingly, because Plaintiffs first, second, third, and fourth claims for relief fall under the IDEA, and Plaintiffs have failed to exhaust available administrative channels, this Court lacks subject matter jurisdiction over these claims and they must be dismissed.[6]

---

[6] The District advocates for dismissal of this action in its entirety under Rule 12(b)(1). However, the fifth claim clearly asserts a state law defamation claim, and the District has not articulated any basis for construing this claim as one arising under the IDEA.

## C. Plaintiffs' State Law Claims

In their fifth claim, Plaintiffs allege that the District made "defamatory comments regarding the Plaintiff, KG, to the public." (Docket No. 1 ¶ 49.) Plaintiffs also refer in their Complaint to "the Education Law of the State of New York" (*Id.* ¶ 33), and urge in their memorandum that their fourth claim is brought, not under the IDEA as stated, but under section 3214(g) of the New York State Education Law (Docket No. 8 at 6).

Having disposed of Plaintiff's federal claims, this Court finds it appropriate to decline to exercise supplemental jurisdiction over Plaintiffs' articulated and unarticulated state claims. *See* 28 U.S.C. § 1367(c)(3).

The United States Supreme Court has instructed that courts ordinarily should decline to exercise supplemental jurisdiction in the absence of federal claims. *See* Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims"); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

The Second Circuit shares this view; where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); *see also*, Marcus v. AT&T Corp., 138 F.3d 46, 57

14

(2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well."); Powell v. Gardner, 891 F.2d 1039, 1047 (2d Cir. 1989) ("in light of proper dismissal of the § 1983 claim against the County, the district court should have declined to exercise pendent jurisdiction over Powell's state-law claims against the County").

Accordingly, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and will dismiss them pursuant to 28 U.S.C. § 1367(c)(3).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Complaint is granted. Plaintiffs' first through fourth claims for relief are dismissed for lack of subject-matter jurisdiction. The Court declines to exercise jurisdiction over, and therefore dismisses, the fifth claim for relief alleging defamation.

## V.  ORDERS

IT IS HEREBY ORDERED, that Defendant's Motion to Dismiss Plaintiffs' Complaint (Docket No. 3) is GRANTED.

FURTHER, that the Clerk of the Court shall take the necessary steps to close this case.

SO ORDERED.

Dated: April 18, 2010
     Buffalo, New York

                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                      Chief Judge
                                        United States District Court